IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| DAVID HENEGAR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| GEORGIA CORRECTIONAL HEALTH, LLC, ) | |
| AUGUSTA UNIVERSITY, AUGUSTA ) | |
| UNIVERSITY HEALTH, AUGUSTA ) | Case No. |
| UNIVERSITY MEDICAL CENTER, INC., BILL ) | |
| NICHOLS, SHARON LEWIS, CINDY MCDADE, ) | 4:18-cv-00192-HLM |
| CHARLES BURKE, SHERIE L. LEE, NURSE ) | |
| MELTON, UNKNOWN MEDICAL PROVIDERS, ) | |
| WARDEN PAMELA BALLINGER, ) | |
| LIEUTENANT STROH, SERGEANT KEITH, ) | |
| UNKNOWN CORRECTIONAL OFFICERS, ) | |
| CORNERSTONE MEDICAL CENTER, CHI ) | |
| MEMORIAL, JOHN OWENSBY, CARRIE ) | |
| PRITCHETT, MEGAN ARTHUR, and the STATE ) | |
| OF GEORGIA, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS CORNERSTONE MEDICAL CENTER, CARRIE PRITCHETT, AND MEGAN ARTHUR'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND FOR LACK OF SUBJECT MATTER JURISDICTION WITH CONSOLIDATED BRIEF IN SUPPORT

COME NOW Cornerstone Medical Center ("Cornerstone"), Carrie Pritchett

("Ms. Pritchett"), and Megan Arthur ("Ms. Arthur") and file this Motion to Dismiss

-1-

for Failure to State a Claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and for a Lack of Subject Matter Jurisdiction, pursuant to Rule 12(b)(1), with a consolidated brief in support.

## Introduction

Plaintiff David Henegar ("Plaintiff") has sued Ms. Pritchett and Ms. Arthur solely because their names happen to appear in Plaintiff's medical records for an emergency visit he made to Cornerstone after suffering a seizure while incarcerated at Walker State Prison.  Plaintiff does not make any actionable allegations of negligence against either Ms. Pritchett or Ms. Arthur, who were both nurses at Cornerstone.  Indeed, Ms. Pritchett and Ms. Arthur make only cameo appearances in Plaintiff's Complaint, which completely fails to identify what either of them allegedly did to cause the injuries of which Plaintiff complains.  Accordingly, the Court should dismiss Plaintiff's claims against them.

Cornerstone appears more frequently in the Complaint, but Plaintiff has alleged his claims in such a way that it is impossible for Cornerstone to determine what it is actually accused of doing or failing to do.  Plaintiff often lumps all of the defendants in this case together when describing the allegedly negligent acts giving rise to Plaintiff's claims.  Plaintiff has not even clearly stated which defendants are

employees or agents of Cornerstone.  Accordingly, the Court should also dismiss Plaintiff's claims against Cornerstone as well.

Additionally, the facts giving rise to Plaintiff's federal claims are not common to the facts giving rise to Plaintiff's state-law medical-malpractice claims.  The two sets of claims are asserted against two different sets of defendants, are based on the occurrence of two different sets of facts that occurred at different times, and will require the application of two different sets of laws, one federal and the other state. Accordingly, this Court lacks supplemental jurisdiction over Plaintiff's state law claims.

## Plaintiff's Factual Allegations

Plaintiff's primary claims in this case, the claims on which federal jurisdiction lies, are based on allegations that employees and officials of Walker State Prison failed to give him sufficient medication to manage his epilepsy.  (Compl., ¶¶ 1-3). Almost as an afterthought, Plaintiff includes in his Complaint allegations against Ms. Pritchett, Ms. Arthur, and Cornerstone for actions they allegedly took after he had a seizure as a result of the other defendants' purported failure to give him his medication at Walker State Prison.   (Compl., ¶¶ 41-45). Those few specific allegations, along with all other allegations contained in the preceding 91 foregoing paragraphs, are incorporated by reference into Plaintiff's Count IV for Medical

Malpractice, and thus, it is impossible to know what allegations Plaintiff intends to rely on to support his medical malpractice claim against Ms. Pritchett, Ms. Arthur, and Cornerstone. (Compl., ¶ 92).

Plaintiff alleges that, after suffering a seizure at Walker State Prison, he was transported by ambulance to Cornerstone's emergency room. (Compl., ¶¶ 39-40). Once he arrived, Ms. Arthur, a registered nurse at Cornerstone, "took his vital signs and recorded his health history." (Compl., ¶ 41). This is the sole allegation that Plaintiff makes about Ms. Arthur's specific interactions with him, and it in no way alleges or supports any negligence by Ms. Arthur.

Plaintiff alleges that, after he was admitted to Cornerstone's emergency room, Defendant John Owensby ("Dr. Owensby") found the level of epilepsy medication in Plaintiff's system to be "dangerously low," so Dr. Owensby prescribed a 300 mg dose of that medicine, with instructions to take 100 mg every eight hours for 10 days. (Compl., ¶¶ 42-43). Plaintiff alleges that Ms. Pritchett, who was also a nurse at Cornerstone like Ms. Arthur, dispensed the medication to Plaintiff pursuant to Dr. Owensby's prescription. (Compl., ¶ 45). Plaintiff alleges that the dose Dr. Owensby prescribed was "patently insufficient," but he fails to allege how Ms. Pritchett, who was simply following Dr. Owensby's prescribed dosage, committed any negligence. (Compl., ¶ 44).

Plaintiff does not sufficiently allege what relationship Cornerstone has with Dr. Owensby.  In fact, his allegations about Dr. Owensby's purported employment are so expansive, it is impossible to tell what acts Plaintiff is claiming are attributable to Cornerstone.   Plaintiff alleges that Dr. Ownesby had an "employment" relationship with "Cornerstone *and/or* August University *and/or* Augusta University Health *and/or* Augusta University Medical Center, Inc.," each of which are also named as defendants in this case.  (Compl., ¶ 21 [emphasis added]).

Compounding the confusion caused by Plaintiff's broad-brush allegations is the Complaint's tendency to lump all of the defendants together, even when it is clear that Plaintiff intends to direct its allegations at some but not all of the defendants.  For example, Plaintiff alleges that "[o]n or about August 27, 2016, Defendants stopped providing him" the epilepsy medication he needed.  (Compl., ¶ 27).  At that time, Plaintiff had not yet even visited Cornerstone and had not seen Ms. Pritchett or Ms. Arthur, and thus, Plaintiff could not have intended to include those two nurses or Cornerstone within the term "Defendants."  (Compl., ¶¶ 39, 41-45).  Plaintiff also alleges that "Defendants had access to an emergency supply of [Plaintiff's] antiepileptic medication, but none of the Defendants provided it to [Plaintiff]."  (Compl., ¶ 36).  But Plaintiff also alleges that Ms. Pritchett did, in fact, dispense to Plaintiff the epilepsy medication that Dr. Owensby prescribed, meaning

that Plaintiff again could not have intended to include Ms. Pritchett as one of the "Defendants" who purportedly refused to give Plaintiff medication from their "emergency supply." (*See* Compl., ¶ 45). Plaintiff also alleges that his "injuries could easily have been prevented had Defendants merely provided him his prescribed medication" and that his injuries were "a direct result of Defendants' complete failure to provide him with any medical care." (Compl., ¶¶ 56, 57). But, again, Plaintiff plainly alleges that Ms. Pritchett and Ms. Arthur ***did*** provide medical care to Plaintiff and ***did*** dispense to him the epileptic medication he was prescribed. (Compl., ¶¶ 41, 45).

Put simply, despite its length, the Complaint lacks allegations regarding what Ms. Pritchett, Ms. Arthur, or Cornerstone specifically did to cause Plaintiff's alleged injuries.

## Argument and Citation of Authorities

The Court should dismiss the Complaint for two independent reasons. First, the Complaint fails to state a claim on which relief can be granted, failing to allege any specific wrongdoing by Ms. Pritchett, Mr. Arthur, and Cornerstone. Second, this Court lacks subject matter jurisdiction over Plaintiff's state law claims because those claims are not based on a common nucleus of operative facts with the federal claims.

**A.     Plaintiff has failed to state a claim against Ms. Pritchett, Ms. Arthur, and Cornerstone on which relief can be granted.**

For purposes of a motion to dismiss for failure to state a claim, the Court is required to accept as true the well-pleaded factual allegations of the complaint.  *See Thomas v. Alcon Labs.*, 116 F. Supp. 3d 1361, 1364 (N.D. Ga. 2013).  Accordingly, although Ms. Pritchett, Ms. Arthur, and Cornerstone intend to dispute most of Plaintiffs' factual assertions against them if the complaint is not dismissed, for purposes of this motion they will not undertake to refute every allegation they contend is false.  Here, even if the well-pleaded allegations are assumed, *arguendo*, to be true, they nevertheless fail to support any of the causes of action asserted in the complaint.  Therefore, the complaint should be dismissed.

**1.     Plaintiff's impermissible "shot-gun" Complaint lumps all of the Defendants together and fails to state a claim as to Ms. Pritchett, Ms. Arthur, and Cornerstone individually.**

Plaintiff has failed to support his claims against Ms. Pritchett, Ms. Arthur, and Cornerstone with sufficient allegations showing what each of them purportedly did wrong.  It is well settled that a plaintiff has an "obligation to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions. . . . [A] formulaic recitation of a cause of action's elements will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007) (internal quotation marks and punctuation omitted).  To avoid dismissal, a plaintiff's claims must be more than merely

"conceivable"; they must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To state a claim properly, a plaintiff must allege a factual basis for each element of each claim they assert, setting forth "enough factual matter (taken as true) to suggest [each] required element." Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295 (11th Cir. 2007).

Additionally, the Eleventh Circuit has "condemned shotgun pleadings [such as the one at bar] upwards of fifty times." Davis v. Coca-Cola Bottling Co., 516 F.3d 955, 979-80 n.54 (11th Cir. 2008) (citing cases), abrogated on other grounds by Iqbal, 556 U.S. 662. Thus, in Beckwith v. Bellsouth Telecommunications, Inc., 146 F. App'x 368 (11th Cir. 2005), the Eleventh Circuit dismissed as a facially-deficient scattershot pleading a complaint that named multiple defendants but failed to specify which of the allegations and claims related to which defendants. Id. at 372.

A complaint is also rendered an improper "shotgun pleading" when "each count incorporates by reference the allegations made" prior to each count, resulting in a complaint with counts that are "replete with factual allegations that could not possibly be material to that specific count, and . . . any allegations that are material

are buried beneath innumerable pages of rambling irrelevancies." <u>Magluta v. Samples</u>, 256 F.3d 1282, 1284 (11th Cir. 2001). "This type of pleading completely disregards Rule 10(b)'s requirement that discrete claims should be [pleaded] in separate counts, and is the type of complaint that [the Eleventh Circuit has] criticized time and again." <u>Id.</u> (citations omitted).

Plaintiff's Complaint impermissibly lumps all of the defendants together and incorporates by reference every preceding paragraph into every Count, causing confusion regarding what each defendant is allegedly responsible for doing or failing to do. As noted above, Plaintiff's allegations are inconsistent on their face, alleging at one point that none of the defendants provided any medical care to Plaintiff or gave him the medication required to manage his epilepsy, but then acknowledging that Ms. Pritchett and Ms. Arthur provided care to Plaintiff and that Ms. Pritchett gave him his prescribed medication. (*Compare* Compl., ¶¶ 36, 56, 57 *with* Compl., ¶¶ 41, 45).

Plaintiff's Complaint also fails to allege what Cornerstone's relationship is with Dr. Owensby, claiming that he possibly could be the employee of four different entities. (Compl., ¶ 21). Without an allegation clearly stating what Dr. Owensby's relationship is with Cornerstone, Cornerstone is left to guess whether the actions of Dr. Owensby or some other defendant are attributable to Cornerstone. The muddled

nature of Plaintiff's allegations is rendered particularly acute by Plaintiff's propensity for alleging that all "Defendants" violated his constitutional rights without distinguishing among the named defendants and without stating what Ms. Arthur, Ms. Pritchett, or Cornerstone did to support such a claim.  (*See, e.g.,* Compl., 63, 81, 88).

Plaintiff has thus failed to allege a claim against Ms. Arthur, Ms. Pritchett, and Cornerstone on which relief can be granted.  Plaintiff has not alleged what each of those three defendants did, individually, to cause his alleged injuries.  Rather, Plaintiff has made broad-brush allegations that are contradictory and often lump all of the defendants together.  Accordingly, for this reason alone, Plaintiff's claims against Ms. Arthur, Ms. Pritchett, and Cornerstone should be dismissed.

**2.    Plaintiff has failed to allege that Ms. Arthur and Ms. Pritchett engaged in any negligent actions that caused Plaintiff's alleged injuries.**

To assert a cause of action for medical malpractice, Plaintiff must allege three elements: (1) a duty owed by a medical-care provider to Plaintiff, (2) a breach of that duty by failure to exercise the required standard of care, and (3) proximate causation.  *See Grantham v. Amin*, 221 Ga. App. 458, 459, 471 S.E.2d 525, 527 (1996).  In the present case, Plaintiff has failed to allege a breach of any duty that

Ms. Pritchett or Ms. Arthur owed to Plaintiff and failed to allege any proximate causation.

As for Ms. Arthur, the Complaint states only that she took Plaintiff's "vital signs and recorded his health history." (Compl., ¶ 41). Plaintiff does not allege that she interacted with Plaintiff in any other way. Nor does he allege how Ms. Arthur breached any duty she owed to Plaintiff when she took his vital signs and recorded his health history. He has also failed to allege any element of proximate causation. Accordingly, Plaintiff has failed to state a claim against Ms. Arthur for medical malpractice.

Plaintiff's allegations against Ms. Pritchett are also deficient. Plaintiff alleges only that Ms. Pritchett dispensed to Plaintiff 300 mg of his epilepsy medication. (Compl., ¶ 45). That amount of medication was the amount that Dr. Owensby prescribed to Plaintiff. (Compl., ¶ 43). Accordingly, Ms. Pritchett was following a doctor's prescription when she gave Plaintiff his medication, and thus, could not have breached any duty she owed to Plaintiff. Plaintiff has also failed to allege any proximate causation as to Ms. Pritchett's actions. For this reason, the Court should dismiss Plaintiff's medical malpractice claims against Ms. Pritchett as well.

Moreover, Plaintiff's claims against Ms. Pritchett and Ms. Arthur, both of whom are registered nurses, also fail to the extent they are based on Ms. Pritchett's

and Ms. Arthur's alleged failure to prescribe more epilepsy medication to Plaintiff. Generally, under Georgia law, a nurse may not prescribe medication to a patient. *See Groover v. Johnston*, 277 Ga. App. 12, 16, 625 S.E.2d 406, 409 (2005); O.C.G.A. § 43-34-26.1.  Although there are limited exceptions to that general rule, none of them are applicable here, and in any event, Plaintiff has not alleged why the general rule would not apply.  Accordingly, as a matter of law, Plaintiff cannot pursue a claim against Ms. Pritchett or Ms. Arthur for failing to prescribe epilepsy medication to the Plaintiff.

**B.    This Court lacks subject matter jurisdiction over the state law claims against Ms. Pritchett, Ms. Arthur, and Cornerstone.**

This Court does not have supplemental jurisdiction over Plaintiff's state law claims because the facts underlying those claims are not a part of the operative facts underlying Plaintiff's federal claims.  When this Court's subject matter jurisdiction is based on federal question jurisdiction, as in this case, the Court can exercise "supplemental" jurisdiction over state claims, but only when those claims "are so related" to the federal claims "that they form part of the same case or controversy." 28 U.S.C. § 1367(a).   State law claims are part of the same case or controversy underlying federal claims when both sets of claims "derive from a common nucleus of operative fact."  *Upper Chattahoochee Riverkeeper Fund, Inc. v. City of Atlanta*, 701 F.3d 669, 679 (11th Cir. 2012) (quoting *United Mine Workers of Am. v. Gibbs*,

383 U.S. 715 (1966)).  When the two sets of claims "involve different issues under different laws arising from different sets of facts," they do not arise from a common nucleus of operative fact, and the district court does not have supplemental jurisdiction over the state law claims.  *Id.* at 678-79 (reversing the district court's determination that it could exercise supplemental jurisdiction).

When a plaintiff claims that he was injured by a violation of federal law committed by one set of defendants and that he was injured by the alleged malpractice of a different set of defendants under state law, the claims do not arise from a common nucleus of operative facts, and the district court lacks subject matter jurisdiction over the state law malpractice claims.  *See Serrano-Moran v. Grau-Gaztambide*, 195 F.3d 68, 69-70 (1st Cir. 1999).

In *Serrano*, the plaintiffs alleged that their son was beaten by police, giving rise to federal claims under 42 U.S.C. § 1983, and that after he was beaten and taken to the hospital, doctors committed malpractice leading to the death of their son, giving rise to claims under state law.  *Id.* at 69.  The district court dismissed the state law claims, and the First Circuit affirmed, holding that the "facts and witnesses as to the two sets of claims are essentially different" because "[w]hether or not the police violated [the decedent's] civil rights has nothing to do with whether the hospital and doctors conformed to the requisite standard of care."  *Id.* at 70.  Accordingly, the

-13-

district court properly held that it lacked subject matter jurisdiction over the state-law, medical-malpractice claims.  *Id.; see also Maranon v. Santa Clara Stadium Authority*, Case No. 15-cv-04709-BLF, 2017 WL 4573370, at *4-5 (N.D. Cal. October 13, 2017) (dismissing the plaintiff's medical malpractice claims against the defendant doctors who treated the plaintiff after he was injured when his wheelchair got stuck in a grate at the other defendants' stadium, in violation of federal accessibility laws); *Mills v. Grant County Detention Center*, Civil Action No. 07-74-DLB, 2007 WL 2914213, at *3-4 (E.D. Kentucky Sept. 27, 2007) (dismissing the plaintiff's legal malpractice claims against the lawyer defendants, which allegedly gave rise to her unlawful detention and federal civil rights claims against the detention center defendants).

Like the plaintiff in *Serrano*, Plaintiff in the present case asserts federal civil rights claims against one set of defendants, based on one set of facts, and separate medical-malpractice claims under state law against a different set of defendants, based on a different set of facts.  Plaintiff's claims against Ms. Pritchett, Ms. Arthur, and Cornerstone arise from events that occurred *after* the events giving rise to Plaintiff's civil rights claims.   Plaintiff alleges that officials and employees associated with Walker State Prison failed to give him his epilepsy medication, causing him to have a seizure.  (Compl., ¶¶ 27-39).  Those allegations give rise to

his § 1983 claims in Counts I, II, and III of the Complaint, none of which are asserted against Ms. Pritchett, Ms. Arthur, Cornerstone, or any of the other defendants allegedly associated with the hospital.  Plaintiff alleges that, after his seizure, he was taken to the hospital, where he was prescribed a purportedly insufficient amount of epilepsy medication to address the deficiency caused by the prison officials. (Compl., ¶¶ 40-44).  Those allegations give rise to his medical malpractice claim, contained in Count IV of the Complaint, which is not directed at any of the defendants named in Counts I, II, and III.

In other words, whether the prison official defendants violated Plaintiff's civil rights will depend on evidence and witnesses that are different from the evidence and witnesses relevant to Plaintiff's medical malpractice claims.  Just as in *Serrano*, whether the prison officials in this case violated Plaintiff's civil rights has nothing to do with whether the hospital, doctors, or nurses, including Ms. Arthur and Ms. Pritchett, conformed to the requisite standards of care.  *See* 195 F.3d at 70. Accordingly, Plaintiff's federal claims and state claims do not arise out of the same nucleus of operative facts, and this Court does not have supplemental jurisdiction over them.

WHEREFORE, Ms. Pritchett, Ms. Arthur, and Cornerstone respectfully request that the Court dismiss all claims against them.

This 23rd day of October, 2018.

Respectfully submitted,

COLES BARTON LLP

*/s/ Aaron P.M. Tady*
Matthew S. Coles
Georgia Bar Number 178020
Aaron P.M. Tady
Georgia Bar Number 696273
*Attorneys for Defendants Cornerstone Medical Center, Carrie Pritchett, and Megan Arthur*

150 South Perry Street, Suite 100
Lawrenceville, Georgia 30046
(770) 995-5552 – Telephone
(770) 995-5582 – Facsimile
mcoles@colesbarton.com
atady@colesbarton.com

## CERTIFICATE OF SERVICE AND COMPLIANCE

This is to certify that on this day, the 23rd day of October, 2018, I electronically filed the within and foregoing **Defendants Cornerstone Medical Center, Carrie Pritchett, and Megan Arthur's Motion to Dismiss for Failure to State a Claim and for Lack of Subject Matter Jurisdiction with Consolidated Brief in Support** and have served all parties who have appeared in this case using the CM/ECF System, which will automatically generate an e-mail notification of such filing to all the attorneys of record listed with the Clerk of Court.

Pursuant to Local Rule 5.1B, the undersigned counsel for Defendants hereby certifies that the foregoing document was prepared in Times New Roman, 14 point font.

This 23rd day of October, 2018.

/s/ Aaron P.M. Tady
*Attorney for Defendants Cornerstone Medical Center, Carrie Pritchett, and Megan Arthur*

COLES BARTON LLP
150 South Perry Street, Suite 100
Lawrenceville, Georgia 30046
(770) 995-5552 – Telephone
(770) 995-5582 – Facsimile
mcoles@colesbarton.com
atady@colesbarton.com

-17-