**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

| | | |
|---|---|---|
| DAVID HENEGAR, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Case No. 4:18-cv-00192-HLM |
| *v.* | ) | |
| | ) | |
| GEORGIA CORRECTIONAL | ) | |
| HEALTH, LLC, et al., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**PLAINTIFF'S CONSOLIDATED RESPONSE
TO MOTIONS TO DISMISS FILED BY DEFENDANTS
OWENSBY, PRITCHETT, ARTHUR, AND CORNERSTONE**

**Introduction**

Mr. Henegar had a grand mal seizure at Walker State Prison because his
caretakers at the prison refused to provide him his antiepileptic medication. Thirty
minutes after this seizure, Mr. Henegar was taken to the emergency room at
Cornerstone Hospital, where he received inadequate medical treatment from
Defendants Arthur, Pritchett, and Owensby. He returned to Walker, and two hours
later suffered another, perfectly preventable, grand mal seizure. These two seizures
caused neurological damage and memory loss.

Mr. Henegar sued prison officials and Cornerstone, alleging inadequate medical care under 42 U.S.C. § 1983 and state law medical malpractice. This Court has jurisdiction over these medical malpractice claims because they are arise out of the exact same set of events and are intricately related to the inadequate medical care and injuries he received at Walker. Defendants Cornerstone, Pritchett, and Arthur moved to dismiss, ECF No. 50, Pritchett, Arthur, Cornerstone Mot. to Dismiss, as did Defendant Owensby, ECF No. 47, Owensby Mot. to Dismiss. This Court granted Plaintiff leave to file a consolidated response. ECF No. 53.

This Court can grant a motion to dismiss "only when the movant demonstrates beyond doubt that the plaintiff can prove no facts in support of his claim which would entitle him to relief." *Simmons v. Sonyika*, 394 F.3d 1335, 1338 (11th Cir. 2004) (quoting *Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1187 (11th Cir. 2004). This Court must accept as true all of the well pleaded allegations and view the complaint in the light most favorable to Mr. Henegar. *See Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). If the facts as pleaded give rise to a plausible inference of liability, the Complaint is sufficient to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**I. Mr. Henegar's Medical Malpractice Claims against Defendants Owensby, Pritchett, Arthur, and Cornerstone are Inextricable from his Federal Claims, and this Court has Supplemental Jurisdiction.**

Mr. Henegar's treatment at Cornerstone and related injuries are inextricable from his federal claims. This Court has supplemental jurisdiction if the state claims pleaded are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C.A. § 1367(a); *Williams v. Morales*, No. CV418-025, 2018 WL 2087247, at *3 (S.D. Ga. May 4, 2018) (federal courts have "supplemental jurisdiction to consider state-law malpractice claims in some cases brought pursuant to § 1983"); *Hunt v. Gualtieri*, 8:15-CV-1257-T-33EAJ, 2015 WL 4250601, at *3-*4 (M.D. Fla. July 13, 2015) (exercising supplemental jurisdiction when all claims against various defendants stemmed from decedent's "arrest, incarceration, medical evaluation, and eventual death at" a county jail); *see also Lucero v. Trosch*, 121 F.3d 591, 597 (11th Cir. 1997) ("The Constitutional 'case or controversy' standard confers supplemental jurisdiction over all state law claims which arise out of a common nucleus of operative fact.") (internal citation omitted).

When state and federal claims are connected by facts, or when it would be impossible to tease out actors, injuries, evidence, or witnesses, Courts must exercise supplemental jurisdiction. *See Palmer v. Hosp. Auth. of Randolph Cty.*, 22

F.3d 1559, 1566 (11th Cir. 1994) (when state law claims arise out of the same set of events as federal law claims, or when the state and federal cases would involve same or similar evidence, federal courts should exercise supplemental jurisdiction) (quoting *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995)); *Morris v. Macon-Bibb Cty. Consol. Gov't*, No. 1:14-CV-00892-AT, 2016 WL 7381703, at *8 (N.D. Ga. Oct. 28, 2016) (exercising supplemental jurisdiction when one doctor's role cannot be "easily excised from the crucial facts in the case"); *Santais v. Corr. Corp. of Am.*, No. 5:16-CV-80, 2017 WL 402979, at *6 (S.D. Ga. Jan. 30, 2017), *report and recommendation adopted*, No. 5:16-CV-80, 2017 WL 1100817 (S.D. Ga. Mar. 23, 2017) (exercising supplemental jurisdiction when state claims do not "raise novel or complex issues").

Defendants cite one out-of-circuit case to support their argument that this court lacks jurisdiction over Mr. Henegar's medical malpractice claims. ECF No. 50, Def. Pritchett, Arthur, and Cornerstone's Mot. to Dismiss, at 13-15 (citing *Serrano-Moran v. Grau-Gaztambide*, 195 F.3d 68, 69-70 (1st Cir. 1999). In that case, the parents of the decedent, a mentally impaired man who was allegedly beaten by police officers and then died 10 days later in the hospital, brought a § 1983 claim against the police and a medical malpractice claim against the doctors. *Id.* at 69-70. The First Circuit affirmed the district court's holding that the

claims were "entirely separate," noting that the relevant events were 10 days apart and had "nothing to do with" each other. *Id.*

That is not the case on the facts pleaded here. The medical care Mr. Henegar received at Cornerstone is intertwined with the medical care he received at Walker. To the extent that Defendants attempt to argue that their treatment of Mr. Henegar was completely isolated from the treatment he received while at Walker, they fail to acknowledge that Mr. Henegar went back to Walker after they treated him for seizures and had another seizure, and that he pleads that their treatment failed to prevent the second seizure and mitigate his damages. Compl., ¶ 100.

By Mr. Hengar's version of events, which at this stage this Court must accept as true, *see Randall*, 610 F.3d at 705, he went to the emergency room at Cornerstone Hospital after having a seizure, interacted with medical providers Owensby, Pritchett, and Arthur, and got treatment. Compl. ¶¶ 40-46. He also alleges that two hours later had another seizure, *id.* at ¶ 47, that he suffered neurological damage and memory loss as a result of both seizures, and that proper treatment after the first seizure would have minimized his injuries. *Id.* at ¶¶ 52, 57, 99. At this point it would be unfair to require Mr. Henegar to tease out whether it was the prison defendants' or the Cornerstone defendants' inadequate care, or both, that caused his second seizure and injuries. Therefore these incidents are not

"entirely separate," and this Court should exercise supplemental jurisdiction. *See Rhodes v. Placer Cty.*, No. 2:09-CV-00489 MCE, 2011 WL 1302240, at *6 n.7 (E.D. Cal. Mar. 31, 2011), *report and recommendation adopted*, No. 2:09-CV-00489-MCE, 2011 WL 1739914 (E.D. Cal. May 4, 2011) (distinguishing *Serrano-Moran* and finding jurisdiction).

On top of that, because all claims against all defendants are based on Mr. Henegar's seizures and treatment, the witnesses will be the same and the evidence will be the same. And this Court will already be addressing medical malpractice claims against the individual defendants at Walker Prison. It will promote judicial economy to treat all these claims together, *see Palmer*, 22 F.3d at 1569 (factors include judicial economy), and given how inextricable the facts are, nonsensical to make Mr. Henegar try these claims separately. *See Hunt v. Gualtieri*, No. 8:15-CV-1257-T-33EAJ, 2015 WL 4250601, at *4 (M.D. Fla. July 13, 2015) (exercising supplemental jurisdiction when witnesses in state and federal cases would be the same). This Court should exercise supplemental jurisdiction over these claims.

**II.    Mr. Henegar Adequately Pleaded that Defendants Owensby, Pritchett, Arthur, and Cornerstone Breached their Duty of Care and Caused Mr. Henegar's Injuries.**

Defendants also argue that Mr. Henegar has not presented evidence to show that they did anything other than a perfectly fine job treating him. Defendants seem to think that Mr. Henegar is required at this point to provide evidence and prove that they committed malpractice. This misconception permeates their brief, as, for example, their citations to cases that are resolved at summary judgment rather than at the motion-to-dismiss stage. *Eg.* ECF No. 50, Pritchett, Arthur, Cornerstone Mot. to Dismiss, at 10 (citing *Grantham v. Amin*, 221 Ga. App. 458, 459 (1996)). At this point Mr. Henegar need not prove anything. At this stage, all he must do is plead facts that support an inference that they breached their duty of care, and that that breach caused his injuries. He has done that.

To survive a motion to dismiss a medical malpractice claim, Mr. Henegar must allege that (1) Defendants owed him a duty of care—a "duty inherent in the health care provider-patient relationship"; (2) that Defendants breached that duty "by failing to exercise the requisite degree of skill and care"; and (3) that this breach proximately caused his injuries. *See Daniels v. Jacobs*, No. 1:16-CV-01164-AT-JSA, 2017 WL 6350599, at *18 (N.D. Ga. May 31, 2017), *report and recommendation adopted*, No. 1:16-CV-01164-AT, 2017 WL 6374875 (N.D. Ga.

Aug. 17, 2017), *aff'd*, No. 17-14429, 2018 WL 4998130 (11th Cir. Oct. 16, 2018);

*Renz v. Northside Hosp., Inc.*, 648 S.E.2d 186, 188–89 (Ga. Ct. App. 2007). At this

stage a "mere allegation" of improper treatment and injury is sufficient to

overcome a motion to dismiss. *Lester v. Chase*, No. 5:09-CV-412 CAR, 2010 WL

3199956, at *2 (M.D. Ga. July 16, 2010), *report and recommendation*

*adopted*, No. 5:09-CV-412 CAR, 2010 WL 3199350 (M.D. Ga. Aug. 12, 2010)

("mere allegation" of improper treatment states claim for medical malpractice)

Mr. Henegar has met this burden. He alleges that after he had a seizure, he

went to the hospital and got care from Defendants Owensby, Pritchett, and Arthur

to treat him for his seizure and prevent him from having another one. That satisfies

his burden to allege an inherent duty of care. *Knight v. W. Paces Ferry Hosp., Inc.*,

262 Ga. App. 220, 221 (2003); *Copeland v. Houston Cty. Hosp. Auth.*, 215 Ga.

App. 207, 207 (1994). Mr. Henegar also pleaded that Defendant Arthur took his

vitals, *id.* ¶ 41; Defendant Owensby prescribed patently insufficient treatment, *id.*

¶¶ 43-44; and then Defendant Pritchett dispensed the medication, *id.* ¶ 45. Then,

after Mr. Henegar returned to his prison cell, he had another seizure which was

preventable through proper care. *Id.* ¶ 47. This gives rise to the reasonable

inference that Defendants did not provide reasonable care. *See, e.g., Johnson v.*

*Monroe*, No. CV417-044, 2017 WL 1395504, at *3 (S.D. Ga. Apr. 13, 2017),

report and recommendation adopted, No. CV417-044, 2017 WL 1827708 (S.D. Ga. May 5, 2017) (allegations that medical professional should have provided more aggressive treatment support claim for medical malpractice); *Lester,* 2010 WL 3199956, at *2; *Knight v. W. Paces Ferry Hosp., Inc.*, 262 Ga. App. 220, 222, 585 S.E.2d 104, 106 (2003) (nurse who administered medication but failed to wash hands or wear gloves breached duty of care). Mr. Henegar further alleged that this seizure caused neurological damage and memory loss. Compl. ¶¶ 41-45, 47, 53. In short, he alleged that these defendants breached their duty of care and caused his injuries. *Id.* ¶ 101.

Defendants Cornerstone, Pritchett, and Arthur seem to argue that Mr. Henegar has incorporated too many paragraphs into his counts, and that they do not know what they might be accountable for. This is an overstated concern. First of all, complaints need not specify precise legal theories. *See Hamilton v. Allen-Bradley Co.*, 244 F.3d 819, 832 (11th Cir. 2001); *Criswell v. Intellirisk Mgmt. Corp.*, 286 Fed. App'x 660, 664 (11th Cir. 2008). All that a Plaintiff must do is give Defendants notice of "the claim being asserted against him and the grounds on which it rests." *Hamilton*, 244 F.3d at 832; *see also Silverstein v. Procter & Gamble Mfg. Co.*, No. CV 108-003, 2009 WL 10678573, at *2 (S.D. Ga. July 2, 2009).

Nevertheless, with the aim of aiding Defendants in understanding the factual allegations in this complaint, Mr. Henegar enumerated his legal claims and listed the Defendants sued for each different claim. If Defendants Pritchett, Arthur, and Cornerstone are confused about which claims Mr. Henegar has pleaded against them, they need look only to the counts detailed on pages 19 through 31 of the First Amended Complaint, and observe that their names appear underneath only Count 3: the Medical Malpractice count. Compl., ¶ 92-101.

And to the extent that Defendants argue that Mr. Henegar has named too many defendants, or has impermissibly alleged that Defendants Owensby, Pritchett, and Arthur were employees of Cornerstone "and/or" Augusta University, *see* ECF No. 50, Pritchett, Arthur, Cornerstone Mot. to Dismiss, at 5, or "lumped" the defendants together, Mr. Henegar certainly has not run afoul of Federal Rule of Civil Procedure 10. Federal Rule of Civil Procedure 8 allows Mr. Henegar to plead in the alternative. *See Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1278 (11th Cir. 2006); *see also Holland v. Levy Premium Foodservice Ltd. P'ship*, No. 1:10-CV-2992-CAP, 2011 WL 13192678, at \*1 (N.D. Ga. Aug. 31, 2011), *aff'd*, 469 F. App'x 794 (11th Cir. 2012); *Marshall v. Hanioti Hotel Corp.*, 31 Fed. R. Serv. 2d 983 (N.D. Ga. 1980) ("The Federal Rules themselves allow a party to plead in the alternative").

And contrary to Defendants' assertions, Courts condemn "shotgun pleadings" only when they haphazardly make it impossible to discern which claims have been raised against which defendants and thereby make it impossible for the Defendants to provide responsive pleadings, and otherwise waste the Court's time by forcing it to wade through irrelevant information. *Ghraizi v. U.S. Bank, N.A.*, No. 1:12-CV-2223-ODE-LTW, 2012 WL 13018297, at *2 (N.D. Ga. Dec. 27, 2012), *report and recommendation adopted*, No. 1:12-CV-2223-ODE-LTW, 2013 WL 12249544 (N.D. Ga. Feb. 8, 2013) (collecting cases).

It is clear from the face of Mr. Henegar's complaint and from the substance of Defendants' motions to dismiss (arguing that Mr. Henegar has not stated a claim for medical malpractice), that Defendants know exactly what Mr. Henegar alleges: their negligence when they treated him at Cornerstone and caused his injuries.

Defendants also argue, confusingly, that Mr. Henegar's complaint does not adequately allege the relationship between the individual medical providers and Cornerstone. ECF No. 50, Pritchett, Arthur, Cornerstone Mot. to Dismiss, at 9-10. Perhaps Defendants have not read the whole complaint. Paragraph 96 of the First Amended Complaint very clearly asserts that "Defendants Owensby, Pritchett, and Arthur were acting as the agent, servant, and/or employee of Cornerstone Medical Center" and "within the scope of their employment." Paragraph 100 also alleges

that Defendant Owensby, Pritchett, and Arthur failed to provide him with appropriate medication after his first seizure, and thus failed to minimize his damages. This is sufficient to state a claim against Cornerstone. *See Doctors Hosp. of Augusta, Inc. v. Bonner*, 195 Ga. App. 152, 161-62 (1990) (hospital liable for negligent actions of employee).

Mr. Henegar is not yet required to prove how Defendants were involved in his treatment or that these Defendants' care was negligent. His allegations support the inference that the treatment they provided fell below the standard of care.

### III. Defendant Owensby Has Been Properly Served, or In the Alternative, Mr. Henegar Will Serve Him within the Time Limit.

Defendant Owensby also argues that he has not been served. Defendant Owensby's authorized agent, Mr. Pursley, the Chief Security Supervisor at Defendant Owensby's place of employment (CHI Memorial Hospital, formerly Cornerstone Hospital) accepted service for Defendant Owensby on September 15, 2018. *See* ECF No. 35-5. Mr. Pursley represented that he was authorized to receive service, and Mr. Henegar is entitled to reasonably rely in good faith on this representation. *Collins v. Fulton Cty. Sch. Dist.*, No. 1:12-CV-1299-ODE-JSA, 2012 WL 12924985, at *3 (N.D. Ga. Dec. 4, 2012).

According to Federal Rule of Civil Procedure 4(e), service is proper if perfected on an agent authorized by appointment or law. An agent is authorized by

Georgia law if "the employee's position be such as to afford reasonable assurance that [she] will inform [her] corporate principal that such process has been served upon [her]." *Nesmith v. Landmark Dodge, Inc.*, 302 Ga. App. 315, 316 (2010) (internal citation and quotation marks omitted) (alteration in original). And in Georgia, the party challenging service bears the burden of showing that the person who accepted service was not authorized to do so. *See Baughan v. Alaoui*, 240 Ga. App. 661, 663 (1999). This "is a heavy burden." *Id.* Defendant Owensby has not presented a shred of evidence to support his contention that Mr. Pursley was not authorized to accept service, and therefore has not met his burden.

Lending further support to Mr. Henegar's assertion that service was proper, Mr. Pursley also accepted service on behalf of Defendants Arthur, Pritchett, and Cornerstone at CHI Memorial Hospital, ECF Nos. 35-2, 35-3, 35-5, Executed Summons, and those Defendants do not contest that they were properly served. This provides the requisite "reasonable assurance" that Mr. Pursley would inform the Defendants that they had been served. *See Murray v. Sloan Paper Co.*, 212 Ga. App. 648, 649 (1994) ("In order for an employee to be authorized to accept service on behalf of a corporation, it is necessary that the employee's position be such as to afford reasonable assurance that he will inform his corporate principal that such

process has been served upon him.") (internal citation and quotation marks omitted).

Beyond that, Defendant Owensby has made substantive representations to the Court on multiple asserted grounds to dismiss. *See United States v. McCoy*, 954 F.2d 1000, 1003 (5th Cir. 1992) (filing answer to complaint constitutes appearance); *Turner v. Salvatierra*, 580 F.2d 199, 201 (5th Cir. 1978) (filing answer and affirmative defenses constitutes an appearance). As an active participant in the case, Defendant Owensby can no longer contest service.

To the extent that Defendant Owensby still does not believe he has been hailed into court, Plaintiff has until November 27, 2018 to serve him, and is attempting to perfect additional service now. FED. R. CIV. P. 4(m).

### Conclusion

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' motion to dismiss in its entirety.

Respectfully submitted,

/s/ Rachel Brady
One of Plaintiff's Attorneys

Arthur Loevy
Mike Kanovitz
Rachel Brady
311 N. Aberdeen Street, Third Floor
Chicago, IL 60607
312-243-5900
brady@loevy.com

Zack Greenamyre
Mitchell & Shapiro LLP
3490 Piedmont Road, Suite 650
Atlanta, GA 30305
404-812-4751
zack@mitchellshapiro.com

## CERTIFICATE OF SERVICE

I, Rachel Brady, an attorney, certify that on November 6, 2018, I filed the foregoing motion using the Court's CM/ECF system, which effected service on all parties of record.

/s/ Rachel Brady
*Attorney for Plaintiff*