**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

| | | |
|---|---|---|
| DAVID HENEGAR, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Case No. 4:18-cv-00192-HLM |
| *v.* | ) | |
| | ) | |
| GEORGIA CORRECTIONAL | ) | |
| HEALTH, LLC, et al., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**PLAINTIFF'S RESPONSE TO MOTION TO DISMISS FILED BY
DEFENDANTS STATE OF GEORGIA, GEORGIA CORRECTIONAL
HEALTHCARE, AUGUSTA UNIVERSITY, AUGUSTA UNIVERSITY
HEALTH, AUGUSTA UNIVERSITY MEDICAL CENTER, NICHOLS,
LEWIS, MCDADE, BURKE, LEE, MELTON, BALLINGER, STROH AND KEITH**

## Introduction

Plaintiff David Henegar is afflicted with epilepsy, a serious medical

condition which can be well managed with medication. But while he was in prison,

Defendants refused to give him his antiepileptic medication and he had two grand

mal seizures. He suffered neurological damage and memory loss as a result. Mr.

Henegar brought this suit under 42 U.S.C. § 1983 alleging unconstitutional

deprivation of medical care.

He contends first that the Individual Defendants knew he was out of

medication for his serious medical condition and failed to secure additional

medication. He also alleges that when he had each of his seizures, Defendants

failed to take reasonable measures to treat him in the aftermath. He also contends

under *Monell* that his injuries were caused by GCH's unconstitutional policies and

practices. *Monell v. Dep't of Social Servs. of New York,* 436 U.S. 658, 690-91

(1978).

Throughout their motion to dismiss, Defendants violate the standard on a

motion to dismiss. They cherry-pick among the Complaint citing only limited

paragraphs to buttress their self-serving accusations that Mr. Henegar has not met

his burden. Defendants know this is not the case, or else have not read the

Complaint.

On a motion to dismiss, this Court must accept as true all of the well-

pleaded allegations and view the complaint in the light most favorable to Mr.

Henegar. *Brown v. Johnson*, 387 F.3d 1344, 1350 (11th Cir. 2004). If the facts as

pleaded give rise to a plausible inference of liability, the Complaint states a claim

for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Ancata v. Prison Health

Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985) ("The threshold of sufficiency

that a complaint must meet to survive a motion to dismiss for failure to state a

claim is, as we have stated previously, exceedingly low." (internal quotation

marks and citation omitted). Mr. Henegar easily meets that requirement.

I. **Georgia Correctional Health, Augusta University, Augusta University Health, and Augusta University Medical Center are Capable of Being Sued.**

Defendants cite three authorities for their contention that Augusta University and its medical divisions are not proper entities to be sued in federal court: the Georgia Constitution, a Georgia statute, and a Georgia Supreme Court case. Ga. Const. art. VIII, § 4, ¶ I; O.C.G.A. § 20-3-51; *McCafferty v. Med. Coll. of Ga.*, 249 Ga. 62, 65 (1982). The first two say nothing about whether Augusta University or its medical divisions can be defendants in a lawsuit, and *McCafferty* has been overruled, *see Self v. City of Atlanta*, 259 Ga. 78 (1989). And to the extent that it is still good law, *McCafferty* says only that these Defendants cannot be sued in state court.

Nevertheless, if this Court determines that these entities are not proper defendants, Mr. Henegar requests leave to file an amended complaint naming the Board of Regents.

II. **Georgia Correctional Health is a Private Contractor and Therefore Capable of Being Sued.**

Defendants incorrectly include Georgia Correctional Health ("GCH") in their bundle of "Board of Regents" Defendants, above. But GCH is its own entity and does not belong in this group. According to the Eleventh Circuit, Georgia

Correctional Health is a private entity that can be sued under section 1983. *Craig v. Floyd County, Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (Georgia Correctional Health is a private entity); *see also Wilkes v. Clayton Cty.*, *Georgia*, No. CIVA 1:05CV3074 GET, 2006 WL 1992613, at *3 (N.D. Ga. July 14, 2006) (same). Defendants have provided nothing other than their bare assertions to suggest otherwise. GCH is a proper defendant.

### III. Mr. Henegar Has Stated a Claim Against GCH Because His Injuries Were Caused by these Defendants' Policies and Practices.

Plaintiff alleges that the Entity Defendants—GCH, Augusta University, Augusta University Health, and Augusta University Medical Center—have propounded unconstitutional policies and practices that caused his injuries. Mr. Henegar concedes that Augusta University, Augusta University Health, and Augusta University Medical Center have Eleventh Amendment immunity to this suit under § 1983. But as a private corporation, GCH does not. *Craig*, 643 F.3d at 1310 (Georgia Correctional Health is subject to suit under § 1983); *Wilkes*, 2006 WL 1992613, at *3 (same).

To survive a motion to dismiss in a suit against an entity alleging an unconstitutional policy or practice under § 1983, "the complaint need only allege that a policy or custom of the entity caused the injury." *Wilkes*, 2006 WL 1992613, at *3 (quoting *Duran v. City of Satellite Beach,* 2005 WL 2129300 (M.D. Fla.

2005) (allegation that plaintiff sustained injuries from employees who violated his rights while acting pursuant to official custom or policy is sufficient)).

A plaintiff can also survive a motion to dismiss by alleging that the defendant failed to adequately train or supervise its employees and that failure caused his injuries. *See, e.g., Gonzalez v. Israel,* No. 15–CIV–60060, 2015 WL 1143116, at *14 (S.D. Fla. Mar. 13, 2015) (finding the plaintiff's allegations that officer was unqualified for his position and had previously engaged in identical unconstitutional activity sufficient to survive motion to dismiss on claim for failure to train or supervise); *McCurry v. Moore*, 242 F. Supp. 2d 1167, 1177 (N.D. Fla. 2002) ("Liability may exist under § 1983 if an employee has not been adequately trained and a constitutional wrong is caused by that failure to train.")

In this District, Courts have held that allegations that GCH was deliberately indifferent to a detainee's serious medical needs because it failed to train its employees, and this failure caused the plaintiff's injuries. *See Wilkes*, 2006 WL 1992613, at *3.Mr. Henegar has likewise alleged that a number of policies and practices, or failures to implement appropriate policies, caused his injuries. First, he alleges that GCH had widespread policies and practices under which medical staff fail to obtain or dispense medications for prisoners and fail to respond to prisoners who report issues with their medications, including not receiving those

5

medications. Compl., ¶ 69. Mr. Henegar also alleges that GCH failed to implement proper policies regarding prisoners' access to medication or medication refills; and prisoners' prompt access to in-house or outside medical care in emergency situations, or an ambulance. *Id*., ¶ 70. Finally, Mr. Henegar alleges that GCH failed to adequately train and supervise their employees. *Id.*, ¶ 71. He also alleges that his injuries were directly caused by these policies and failures to train, and has alleged a number of facts that support his suggestion that his injuries were caused by GCH's unconstitutional policies and practices. *Id.*, ¶ 66.

Mr. Henegar also cites examples in which the Entity Defendants' employees failed to provide necessary medication to prisoners. Compl., ¶ 61. Keeping in mind that at this stage he is not required to prove his claims, but merely to point to facts give rise to the inference of liability, *Ashcroft*, 556 U.S. at 678, these examples of the Entity Defendants' doctors denying inmates medication support Mr. Henegar's claim that GCH had no policy to ensure inmates receive medication, or were otherwise not trained on how to ensure inmates got necessary medication.

Even further, it can be inferred that there was a policy or undisputed problem that interfered with calling an ambulance in a medical emergency. Mr. Henegar had two seizures. Defendants Stroh and Keith were at the scene of both seizures. Compl., ¶ 39, 47. These correctional officers learned after Mr. Henegar's

first seizure that he required emergency medical care and transportation to the emergency room. But when Mr. Henegar had his second seizure and exhibited the same symptoms, and knowing that these symptoms required a trip to the emergency room, these officers still did not call an ambulance. *Id.*, ¶ 39, 47. This gives rise to the inference that there was a policy in place under which they either were not allowed to call an ambulance in a medical emergency, or were not adequately trained on how to appropriately respond to a medical emergency.

On top of that, the Individual Defendants in their motion disclaim any responsibility for Mr. Henegar's injuries, and point the finger into the void to assert that no one was responsible for ensuring that Mr. Henegar got his antiepileptic medication. ECF No. 45-1, Def's Memo. in Support of Mot. to Dismiss, at 6-12. They assert that it was neither the guards' responsibility, the nurses' responsibility, nor any of the supervisors' responsibility to give Mr. Henegar his medication. This also gives rise to the inference that there were inadequate policies in place. This, combined with Mr. Henegar's allegations that GCH had unconstitutional policies and practices, is sufficient to state a claim.

### IV. Mr. Henegar Has Stated Claims for Deliberate Indifference and Failure to Intervene against the Individual Defendants

Mr. Henegar has also stated claims for deliberate indifference against Defendants Nichols, Lewis, Ballinger, Burke, McDade, Lee, Melton, Stroh, and

Keith. As a threshold matter, Defendants argue that Mr. Henegar's pleading requirements for deliberate indifference and failure to intervene are the same and argue only about the deliberate indifference. Doc. No. 45-1, Def.'s Memo in Support of Mot. to Dismiss, at 6. They are not the same. *See Daniels v. Allen*, No. 6:17-CV-45, 2018 WL 1185503, at *1 (S.D. Ga. Mar. 7, 2018) (treating deliberate indifference and failure-to-intervene claims separately). Because Defendants have not addressed the elements of a failure-to-intervene claim, they have waived any argument that this claim should be dismissed. *See Univ. of Alabama Bd. of Trustees v. New Life Art, Inc.*, 683 F.3d 1266, 1280 n. 41 (11th Cir. 2012) (party waives an argument when the party makes only "bald and conclusory statement" and does not expand on this statement).

A.    Supervisor Defendants

Mr. Henegar has alleged sufficient facts to state a claim against the supervisor defendants Nichols, Lewis, Ballinger, and Burke. Supervisors are liable for deliberate indifference when they are on notice of historical patterns of abuse and have not addressed them, or when they propound policies or customs that result in deliberate indifference. *See Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008); *Lee v. State Patrol Office*, No. 1:12-CV-3041-TWT, 2013 WL 2445203, at *3 (N.D. Ga. June 5, 2013) (quoting *Mathews v. Crosby,* 480 F.3d

1265, 1270 (11th Cir. 2007); *Flowers v. Brown*, No. CV 112-119, 2013 WL 633331, at *5 (S.D. Ga. Jan. 2, 2013), *report and recommendation adopted*, No. CV 112-119, 2013 WL 633330 (S.D. Ga. Feb. 20, 2013). To survive a motion to dismiss, Mr. Henegar must allege only that the unconstitutional policies and practices (or lack thereof) caused the constitutional violation, and that policymakers were aware of deficiencies in the policies or practices. *See Sorensen v. Nocco*, 677 F. App'x 570, 573 (11th Cir. 2017).

Mr. Henegar has alleged both of these. He specifically alleges that Defendants Nichols, Lewis, Ballinger, Burke, and McDade (the Supervisor Defendants) were responsible for creating and implementing unconstitutional policies and practices at Walker Prison, failing to create policies that would ensure inmates are provided with medication and prompt medical attention in an emergency, and for failing to train their employees. Compl., ¶ 74-78. He also alleges that they were aware the policies were deficient. *Id*. Plus, Mr. Henegar alleges that Defendant Ballinger, as warden, was responsible for the implementation, oversight, and supervision of policies and practices at Walker, *id.*,¶ 16, was aware of the problems and policies and practices alleged in the compliant, and did nothing do address them, *id.*,¶ 38.

Specifically, and as discussed earlier, Mr. Henegar also pleads other incidents in which prison medical staff, pursuant to Entity Defendants' policy and practice, failed to provide inmates with necessary medication. Compl.,¶ 61. Unless Defendants intend to argue that these Supervisor Defendants were completely unaware of what the medical staff were doing in their prisons, it is reasonable to infer at the pleading stage that, as supervisors, Defendants Nichols, Lewis, Ballinger, and Burke were aware of these incidents but did not but implemented no policies to address them. *See Wilson v. Danforth*, No. CV 316-040, 2017 WL 9482458, at *7 (S.D. Ga. Dec. 19, 2017), report and recommendation adopted, No. CV 316-040, 2018 WL 496997 (S.D. Ga. Jan. 22, 2018) ("it can be reasonably inferred Defendants were aware of these circumstances alleged by virtue of their positions as prison officials concerned with the security and day-to-day operations at TSP"); *see Rhiner v. Jones*, No. 2:15-CV-14319, 2016 WL 5024170, at *3 (S.D. Fla. Sept. 20, 2016) (knowledge could be inferred because of Defendants' positions as Warden and Assistant Warden).

On top of these other incidents displaying an unconstitutional policy from the policymakers at GCH and Walker, Mr. Henegar has also met his burden to state a claim by alleging that the policies themselves are unconstitutional. *Craig*, 643 F.3d at1311 ("In the absence of a series of constitutional violations from

which deliberate indifference can be inferred, the plaintiff[ ] must show that the policy itself is unconstitutional.") (quoting *Estate of Novack ex rel. Turbin v. Cty. of Wood*, 226 F.3d 525, 531 (7th Cir. 2000)). Policies that do not ensure inmates receive medication or transportation to an emergency room in a medical emergency are unconstitutional. *Taylor v. Adams*, 221 F.3d 1254, 1259 (11th Cir. 2000) (sending inmate to hospital in medical emergency is appropriate). Mr. Henegar has met his burden as to the Supervisor Defendants.

B.     Walker Defendants

To state a claim for deliberate indifference against a person who was directly involved in his care, Mr. Henegar must allege (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Benson v. Gordon County*, 479 F. App'x 315, 317 (11th Cir. 2012) (per curiam) (internal citation omitted); *Goebert v. Lee Cnty.,* 510 F.3d 1312, 1326-27 (11th Cir. 2007). It is sufficient for Mr. Henegar allege that Defendants knew that he needed medical care "but simply refused to provide it." *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985).

Defendants do not dispute that Mr. Henegar has alleged that he has a serious medical need, nor that Mr. Henegar has alleged that Defendants' conduct caused

his injury. ECF No. 45-1, Def.'s Memo in Support of Mot. to Dismiss, at 15. Defendants dispute only that Mr. Henegar has alleged that Defendants knowingly disregarded his medical need.

Mr. Henegar specifically alleges that Defendants Burke, McDade, Lee, Melton, Stroh, and Keith (the "Walker Defendants") (1) were aware of his need for medication, Compl.,¶ 29, 30; (2) were aware that he faced a serious risk of harm without it; (3) were aware that his medication was running out, *id*.,¶ 32-33; (4) were aware that he was not receiving his medication, *id*., ¶¶ 28-31, 34; and (5) willfully ignored his requests for medication and withheld available medication *id*.,¶ 35, 36. Mr. Henegar further alleges that the Walker Defendants were aware that he was having a seizure and was unconscious but did not call for an ambulance, *id*.,¶ 39, 47, 48, 50, and that Defendant McDade went so far as to tell Defendants Stroh and Keith *not* to call an ambulance, *id*.,¶ 48.

Defendants correctly point out that prisoners are entitled only to "minimally adequate" medical care, and that "it is not required that the medical care provided to [inmates] be perfect the best obtainable, or even very good." ECF No. 45-1, Def.'s Memo in Support of Mot. to Dismiss, at 6-7 (citing *Harris v. Thigpen*, 941 F.2d 1495, 1504, 1510 (11th Cir. 1991). Defendants continue that when a prisoner "*has received…medical attention* and the dispute is over the adequacy of

treatment, federal courts are generally reluctant to second guess medical judgments." ECF No. 45-1, Def.'s Memo in Support of Mot. to Dismiss, at 7 (citing *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (emphasis added). Indeed, this is exactly Mr. Henegar's point: A prisoner is constitutionally entitled to minimally adequate medical care. That is—when he has a serious medical need, he must receive care.

But when a prisoner alleges no medical care, he has stated a deliberate indifference claim. *See Benson*, 479 F. App'x at 319 (prisoner stated claim against nurse who intentionally withheld prescribed pain medication from prisoner for days despite knowing prisoner was in pain); *Brown v. Johnson,* 387 F.3d 1344 (11th Cir. 2004) (finding deliberate indifference when defendants were aware of inmate's medical diagnosis but withdrew his prescribed treatment); *Montgomery v. Pinchak,* 294 F.3d 492 (3d Cir. 2002) (allegations that prison officials withheld medication for pain and rash would state claim for deliberate indifference).

Here Mr. Henegar received no medical attention. Walker Defendants denied Mr. Henegar his medication altogether. Defendants Stroh, Keith, Lee, and Melton inventoried the pill cart and knew Mr. Henegar was out of medication, but did nothing about it. Compl., ¶¶ 27-35. There is no dispute about whether the medication he received was adequate or whether any of the defendants made a

judgment call, or whether any corrections personnel relied on any medical employee's medical judgments. Mr. Henegar alleges that a medical professional determined that his antiepileptic medication was necessary but Defendants failed to give it to him. That amounts to deliberate indifference. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (provision of such minimal care that it amounts to no treatment at all rises to level of deliberate indifference); *Davison v. Stephen Nicolou, P.A.*, No. CV 616-039, 2018 WL 1278193, at *5 (S.D. Ga. Mar. 12, 2018) (same).

Likewise, Defendant Burke was the medical supervisor at Walker Prison. He was responsible for writing inmates' prescriptions and approving medications. Compl., ¶ 18. Mr. Henegar alleged that Defendant Burke is responsible for making the policies and had knowledge that inmates were routinely denied medication, and that he had notice that Mr. Henegar had serious medical needs and faced a risk of harm without his medication. *Id.*, ¶ 63, 73-74. Mr. Henegar also has alleged that there was a note placed in Mr. Henegar's medical chart four days before he stopped getting medication alerting Walker staff that he needed a prescription refill. It is a reasonable inference at this stage that Defendant Burke, as the medical supervisor and person responsible for writing prescriptions, was aware that Mr. Henegar's medication was gone. *See Wilson*, 2017 WL 9482458, at *7 (inferring

supervisor had knowledge because he was a supervisor); *Rhiner*, 2016 WL 5024170, at *3 (same). Defendant Burke also had the authority to give (or authorize someone else to give) him medication from the prison's emergency supply,[1] *id.*, ¶ 37, but did nothing about it.

The same goes for Mr. Henegar's medical care after each of his seizures. Mr. Henegar alleged that after he had both of his seizures, Defendants Stroh, Keith, Lee, and McDade deprived him of emergency medical attention for up to 30 minutes. Compl., ¶ 39-40, 47, 49. Defendants Stroh and Keith were at the scene of both seizures and neither called an ambulance either time, even after observing his seizure the first time and learning that he required an ambulance. *Id.*, ¶ 39, 47. Defendant Lee was on the scene after Mr. Henegar's second seizure and also did not call an ambulance. *Id.*, ¶ 50. Defendant McDade affirmatively told other Defendants not to call an ambulance, *id.*, ¶ 48, and after this was all over, Defendant Ballinger offered to fire her, *id.*,¶ 60. These actions were not a matter of medical judgment, but of complete deprivation of care during a medical emergency.

---

[1] Defendant Burke argues that Mr. Henegar suggested that he should have harmed another inmate to save Mr. Henegar. ECF No. 45-1, Def.'s Memo in Support of Mot. to Dismiss, at 10.) This is not Mr. Henegar's assertion. Mr. Henegar alleges only that Defendant Burke should have ensured that Mr. Henegar got medication from the prison's excess supply.

**V.    Mr. Henegar has Pleaded Facts to Establish that Defendants are Liable for Conspiracy Under § 1983**

Mr. Henegar has also pleaded facts sufficient to support an inference that the individual defendants engaged in a conspiracy to deprive him of constitutionally adequate medical care.

        **A.    Defendants are not protected by the intracorporate conspiracy doctrine.**

Defendants argue that all of the Individual Defendants are shielded from liability because they are all members of the same agency and cannot conspire with each other. Doc. 45-1, Def.'s Memo in Support of Mot. to Dismiss, at 13-14.

This is wrong for a number of reasons. First, Defendants cite no cases to support that the intracorporate conspiracy doctrine applies at all to lawsuits under § 1983. Doc. 45-1, Def.'s Memo in Support of Mot. to Dismiss, at 13. Second, to the extent that Defendants argue that GCH is a state agency, the individual defendants here are employees of separate entities: GCH, Augusta University, and Georgia Department of Corrections. While the intracorporate conspiracy doctrine may shield individuals within one state agency for some actions, *Dickerson v. Alachua Cty. Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000) (citing *Wright v. Ill. Dep't of Children & Family Servs.,* 40 F.3d 1492, 1508 (7th Cir.1994) (intracorporate conspiracy doctrine applies to government agencies like

Department of Children and Family Services)); *Rehberg v. Paulk*, 611 F.3d 828, 854 (11th Cir. 2010), *aff'd*, 566 U.S. 356 (2012) (applying doctrine to employees of District Attorney's office); *Jordan v. Randolph Cty. Sch.*, No. 4:08-CV-131CDL, 2009 WL 1410082, at *7 (M.D. Ga. May 19, 2009) (applying doctrine to employees of a single school district), it certainly does not shield employees *between different* government agencies, *see Lapar v. Potter*, 395 F. Supp. 2d 1152, 1157 (M.D. Fla. 2005) (intracorporate conspiracy doctrine applies within agencies, not between agencies). By Defendants' contention, all state employees would be shielded by this doctrine at all times. This defies logic, and defendants have cited no law supporting it.

Moreover, Defendants are not shielded from liability at this stage because it is plausible that their actions fall under the personal-stakes exemption to the intracorporate conspiracy doctrine. Under this exemption employees are not shielded by the doctrine if their conspiratorial actions are done not to benefit the company, but for "personal reasons." *Israel v. Bellsouth Telecommunications, Inc*, No. 12-60806-CIV, 2012 WL 12862809, at *4 (S.D. Fla. July 10, 2012). This includes acting with malice. *See Hoffman v. Baltimore Police Dep't*, 379 F. Supp. 2d 778, 796 (D. Md. 2005) (allegation that employee was motivated by malice is sufficient to survive a motion to dismiss based on personal-stakes exemption to

intracorporate conspiracy doctrine). Plaintiff has alleged that Defendants were motivated my malice. Compl., ¶ 83. Accepting this allegation as true, as this Court must, Mr. Henegar has pleaded facts to raise the inference that Defendants' conduct falls within an exception to this doctrine and that it does not shield them.

B.     Mr. Henegar has alleged facts to state a conspiracy claim.

Defendants correctly point out that to state a claim for conspiracy under § 1983, Mr. Henegar need allege only that his civil rights were violated; that Defendants agreed to violate them; and that he was injured. *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1563 (11th Cir. 1990). Defendants fail to recognize, however, the agreement need not explicit. *See McMillian v. Johnson*, 878 F. Supp. 1473, 1497 (M.D. Ala. 1995), *rev'd in part on other grounds*, 88 F.3d 1554 (11th Cir. 1996), *amended on reh'g*, 101 F.3d 1363 (11th Cir. 1996) (fact that defendants took common steps and had similar feelings about plaintiff gave rise to inference of agreement sufficient to survive summary judgment); *Duke v. United States*, 233 F.2d 897, 900 (5th Cir. 1956) ("[I]t is sufficient to say that a conspiracy is an agreement to commit a crime or to engage in criminal activities attended by one or more overt acts. It needs no writing to make or prove it. It need not be explicit. It may be implicit. Evidence to prove it need not, therefore, be direct."); *Bessinger v.*

*Mulvaney*, No. 7:14-CV-116 (HL), 2016 WL 4445762, at *9 (M.D. Ga. Aug. 22, 2016) (agreement can be implicit or explicit); 15A C.J.S. Conspiracy § 19.

Mr. Henegar has alleged that Defendants each took an overt act to deprive him of his constitutional rights and then cover it up. Compl ¶¶ 82, 86. These Defendants' acts, including withholding medication and refusing to call an ambulance, advanced that end. All that is necessary is that a Defendant agree—explicitly or tacitly—to the objectives of the conspiracy and that the Defendant do *something*—some overt act—in furtherance of the conspiracy. *See Howard v. Country Club Estates Homeowners Ass'n, Inc.*, No. 1:09-CV-37 (WLS), 2011 WL 13176587, at *9 (M.D. Ga. Sept. 30, 2011), *aff'd*, 486 F. App'x 48 (11th Cir. 2012) (plaintiff need only allege that defendant committed an overt act in furtherance of conspiracy); *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996) (§ 1983 conspiracy exists when defendants act together and an overt act is done in furtherance of a conspiracy). He has stated a claim.

## VI.    Defendants Are Not Protected By Qualified Immunity

Defendants are not shielded by qualified immunity. To survive a motion to dismiss on qualified immunity grounds, Mr. Henegar must allege facts with "sufficient detail for Defendants to understand what alleged rights were violated…and which of their actions allegedly violated those rights," and "for the

court to determine whether those facts indeed set out a violation of rights and whether those rights were clearly established when these incidents occurred." *Amnesty Int'l, USA v. Battle,* 559 F.3d 1170, 1180 (11th Cir. 2009); *see Harper v. Lawrence Cty., Ala.*, 592 F.3d 1227, 1233 (11th Cir. 2010).

Mr. Henegar easily meets that burden. As discussed above, he has alleged that Defendants' conduct violated his Eighth Amendment right to receive medication for his epilepsy and to get emergency medical attention after he had his grand mal seizures. Thus the only step at issue in the analysis of qualified immunity here is whether the constitutional right that was violated was "clearly established" in 2016 when Mr. Henegar received inadequate medical treatment. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *Benson v. Gordon Cty., Ga.*, 479 F. App'x 315, 317 (11th Cir. 2012). It was.

Qualified immunity operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz,* 533 U.S. 194, 206 (2001). "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope*, 536 U.S. at 741. "A judicial precedent with materially identical facts is not essential for the law to be clearly established, but the preexisting law must make it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue."

*Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010).

It was clearly established in 2016 that prisoners have a right to receive medication. The Eleventh Circuit held that in 2013, it was clearly established that an epileptic prisoner has a right to receive antiepileptic medication. *Sparks v. Ingle*, 724 F. App'x 692, 695 (11th Cir. 2018) (concluding that a prisoner's clearly established right to receive medication put a jail administrator on notice that his actions delaying renewal of an epileptic inmate's antiseizure medication violated the inmate's rights, and precluded a qualified immunity defense)..

It has likewise been clearly established for decades that that a prison officer's "knowledge of the need for medical care and an intentional refusal to provide that care" violates the Constitution. *Benson*, 479 F. App'x at 319 (quoting *Adams v. Poag*, 61 F.3d 1537, 1543-44 (11th Cir. 1995)); *Stoner v. Fye*, No. 5:15-CV-102 (CAR), 2017 WL 1294439, at *9 (M.D. Ga. Mar. 31, 2017) (it is clearly established "that an official acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has a life-threatening condition or an urgent medical condition that would be exacerbated by delay.") (internal citation and quotation marks omitted).

There is no question that the facts as alleged, when viewed in a light most favorable to Mr. Henegar, show that his rights to receive medication before his

seizure or emergency medical care after his seizures were clearly established in 2016. *See Sparks*, 724 F. App'x at 695; *Benson*, 479 F. App'x at 319; *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004); *Stoner*, 2017 WL 1294439, at *9. Defendants are not entitled dismissal on the ground of qualified immunity.

### VII. Defendants Are Not Shielded from Mr. Henegar's State Claims by Sovereign Immunity.

Defendants incorrectly assert that they are protected by sovereign immunity from liability for claims under state law made in federal court. First, as to the Individual Defendants: Georgia's exercise of sovereign immunity does not extend to claims against State officials in their individual capacity. Ga. Const. art. I, § 2, ¶ IX(d); *Thornton v. Jackson*, 998 F. Supp. 2d 1365, 1381 (N.D. Ga. 2014); *Tittle v. Corso*, 256 Ga. App. 859, 862 (2002). The individual defendants were sued in their individual capacities, so sovereign immunity does not protect them from Mr. Henegar's state-law claims. *Thornton*, 998 F. Supp. 2d at 1381.

As to the Entity Defendants, Defendants have presented nothing other than their own assertions to establish that GCH is an "arm of the state." As discussed above, GCH is in fact a private contractor, and is therefore not entitled to sovereign immunity. *Craig*, 643 F.3d at 1310; *Wilkes*, 2006 WL 1992613, at *3.

And for the remaining defendants—the State of Georgia, Augusta University, and its medical divisions—Plaintiff concedes that the Augusta

University Defendants are immune from suit on his state law medical malpractice and respondeat superior claims. However, the immunity does not extend to the claims for indemnification. The Georgia Tort Claims Act "waives the State's sovereign immunity for such claims so long as the activity of the State that is alleged to make it a tortfeasor, and thus subject to a claim for contribution or indemnity, does not fall within one of the exceptions to the waiver of sovereign immunity listed in OCGA § 50-21-24." *Dep't of Transp. v. Montgomery Tank Lines, Inc.*, 276 Ga. 105, 105 (2003). Here, as Defendants recognize, Mr. Henegar alleges that activity of the State and its arms makes it a tortfeasor, and none of the exceptions to this waiver apply. OCGA § 50-21-24. And so the State and its arms have waived their sovereign immunity with respect to Mr. Henegar's indemnification claim.

Plaintiff concedes that Augusta University Defendants are immune from suit on his state law medical malpractice and respondeat superior claims.

### VIII.   The *Ante Litem* Notice Provision Should be Tolled or, In the Alternative, Plaintiff Granted Leave to Serve Notice Now

As a result of Defendant's unconstitutional conduct, Mr. Henegar suffered brain damage and memory loss. Compl., ¶ 57. Although Georgia state law has certain 12-month notice and service requirements for state law claims against public entities, *see* O.C.G.A., §§ 50-21-26; 20-21-35, the *ante litem* notice

provisions in the Georgia Tort Claims Act can be tolled. *See Carter v. Glenn*, 243 Ga. App. 544, 548 (2000); O.C.G.A. § 9-3-90.

Mr. Henegar alleges that he suffered brain damage and memory loss. He has not yet been sufficiently examined by experts, but consistent with pleading requirements at this stage, it is sufficient for these allegations to toll the 12-month *ante litem* notice provision. It would be unfair for the Defendants to cause Mr. Henegar's mental incapacity and render him unable to provide notice of his intent to sue, and then hold him responsible for not providing notice. *See Booth v. Carnival Corp.*, 522 F.3d 1148, 1150 (11th Cir. 2008) (If "an inequitable event prevented a plaintiff's timely action," equitable tolling may be available); *Chapman v. Burks*, 183 Ga. App. 103, 105(1), 357 S.E.2d 832 (1987) (tolling appropriate "where it is not fair to charge a suitor with the running of the clock, because of his mental condition"). Therefore the notice period should be tolled and Mr. Henegar should be allowed to provide notice now.

With this Court's permission, Plaintiff will provide notice to the appropriate parties as required by O.C.G.A. §§ 50-21-26 and 20-21-35, and will request leave to refile this complaint.

## IX.    Indemnification

Plaintiff has also pleaded facts to state a claim for indemnification.

Defendants argue that because the State has sovereign immunity, it cannot be sued

for indemnification. ECF No. 45-1, Def.'s Memo. in Resp. to Mot. to Dismiss, at

24. But as Plaintiff explained above, the State entities are not shielded from an

indemnification claim by sovereign immunity.

Defendants also make a cursory argument that there is no direct cause of

action for indemnification, *id.*, but Defendants have presented no authority to

suggest that Plaintiff *cannot* make this claim. And in fact Courts in this Circuit

have held otherwise: "The State of Georgia, of which the Department of

Corrections is an agency, indemnifies corrections employees from civil suit and

funds the defense of its employees in civil cases arising out of the scope of their

employment." *Davison v. Nicolou*, No. CV616-039, 2017 WL 3726712, at *4

(S.D. Ga. Aug. 29, 2017) (citing O.C.G.A. § 45-9-1 et seq.); *see* O.C.G.A. §§ 45-9-

4, 45-9-4.1. At this stage it is Defendants' burden to show that Plaintiff has not

stated a claim, and they have no done so.

## Conclusion

For the foregoing reasons, Plaintiff respectfully requests that this Court deny

Defendants' motion to dismiss in its entirety.

Respectfully submitted,


/s/ Rachel Brady
One of Plaintiff's Attorneys

Arthur Loevy
Mike Kanovitz
Rachel Brady
311 N. Aberdeen Street, Third Floor
Chicago, IL 60607
312-243-5900
brady@loevy.com

Zack Greenamyre
Mitchell & Shapiro LLP
3490 Piedmont Road, Suite 650
Atlanta, GA 30305
404-812-4751
zack@mitchellshapiro.com

## CERTIFICATE OF SERVICE

I, Rachel Brady, an attorney, certify that on November 6, 2018, I filed the foregoing motion using the Court's CM/ECF system, which effected service on all parties of record.

/s/ Rachel Brady
*Attorney for Plaintiff*