# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

| | |
|---|---|
| DAVID HENEGAR, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) Case No. 4:18-cv-00192-HLM |
| *v.* | ) |
| | ) |
| CINDY McDADE, et al., | ) JURY TRIAL DEMANDED |
| | ) |
| *Defendants.* | ) |

**PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES**

# EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| DAVID HENEGAR, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 4:18-cv-00192-HLM |
| GEORGIA CORRECTIONAL HEALTH, LLC, et al., | |
| Defendants. | |

### DEFENDANTS LEE, MELTON, STROH, AND KEITH'S AMENDED SUPPLEMENTED OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST INTERROGATORIES

Defendants Sherrie Lee, Mary Ann Melton, John Stroh, and Jerome Keith object and through counsel, and pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules of this Court, amend their supplemented responses to Plaintiff's first interrogatories as follows:

A.   These responses are based upon, and therefore limited by, records and information in existence, presently recollected, and thus far discovered in the course of preparing these responses.  Defendants reserve the right to make changes to these responses if it appears at any time that inadvertent errors or omissions have been made or additional or more accurate information has become available.

state that, to the best of their knowledge, Plaintiff has been convicted of multiple offenses on multiple occasions, as noted in his institutional file.

These Defendants also note that any felony convictions are presumptively admissible under Rule 609 and the burden of showing that they should be excluded is on the party seeking exclusion. *Osterneck v. E.T. Barwick Indus.*, 106 F.R.D. 327, 334 (N.D. Ga. 1984).

*6.   For any Affirmative Defenses that you have asserted or will assert in this matter, please describe without resorting to legal conclusions the entire factual basis supporting each such defense and specifically identify any witnesses or physical, documentary, or testimonial evidence that supports each such defense. Please provide a detailed description of every fact and legal basis on which the affirmative defense is asserted so that Plaintiff may have the opportunity to investigate by way of additional discovery requests. For example, if you intend at any point in this litigation to assert an immunity defense, please state all facts, evidence, and legal bases for such a defense, identifying any witnesses or physical, documentary, or testimonial evidence relating to the immunity defense.*

These Defendants object that this interrogatory is overbroad and seeks information that are irrelevant to any claim or defense to the extent that it seeks discovery regarding allegations, claims or parties who have been dismissed from this case. Subject to and without waiving the foregoing objections, these Defendants note (1) many of the defenses are legal defenses; and (2) Plaintiff has the burden of proof; Defendant is not required to prove anything.  By way of further response, these Defendants state that they dealt appropriately with Plaintiff based on their knowledge, training, and role, and

8

thus, they do not think that Plaintiff can show that what they did or did not do was deliberately indifference especially as shown by the binding, clearly established law.

Melton noted in Plaintiff's medical records, before Plaintiff's medication ran out, that the medication needed to be refilled. Melton then was on medical leave that started the day after she made the notation and did not end until many weeks later. Melton had nothing to do with the provision the medication or any healthcare to Plaintiff during the time that she was away from work and had no knowledge that Plaintiff's prescription had not been filled or that he was not receiving his medication.

Lee was not involved in the evening pill calls when Dilantin was to be distributed to Plaintiff. She had no knowledge that he was not receiving his medication and it was not her responsibility to provide it to him. She did provide Plaintiff with medically appropriate care on September 1, 2016, as described in the medical records.

Stroh and Keith dealt appropriately with the medical situations presented to them. Late on August 31, 2016, Stroh was notified by Officer Shelby Robertson that Plaintiff appeared to be having a seizure. Lt. Stroh attempted to reach the on-call physician and when that was unsuccessful, he called Walker County EMS. After Plaintiff returned to the prison from the

emergency room, Keith responded to a call for assistance from an inmate and found Plaintiff having what appeared to be a seizure. Keith notified Stroh and Stroh contacted medical staff. Lee evaluated Plaintiff and consulted with a physician (Dr. Smith). Stroh then again contacted EMS for emergency transport. To the extent that Stroh and Keith were involved in pill call, they also instructed Plaintiff to inform medical staff concerning the absence of any needed medication. Plaintiff was a general population inmate who was capable of getting himself to medical to inform them himself of his need for medication and any absence thereof during pill call.

While not strictly speaking an affirmative defense, these Defendants also note that Plaintiff has had multiple seizures and not just on the night in question. Accordingly, these Defendants submit that Plaintiff cannot prove causation of any injury.

Additionally, these Defendants submit that Plaintiff's post-incident actions, including continuing to seek out work details and his post-release life indicate that he has not suffered any long-term injury.

7.     *Given the sum total of your personal knowledge of the policies, practices, and customs in place at Walker State Prison and Georgia Department of Corrections between January 2014 and the present, please state whether you or any other Person involved in any way in the medical evaluation or treatment of David Henegar acted inconsistently with any of those policies, customs, or practices (including formal or informal, and written or unwritten). If the answer is in the affirmative, please:*

10

*9.   Do you contend that David Henegar received adequate medical care at Walker during the period of time that you worked at that facility? If your answer is anything but an unqualified "yes," please state every reason that you believe Mr. Henegar's seizures were the result of something other than the Defendants in this case. If you answer in the affirmative, please state which Defendants you contend caused Mr. Henegar's seizures.*

These Defendants that this Request is unlimited as to time or medical condition, and thus, seeks information that is not relevant to any claim or defense. Subject to and without waiving the foregoing objections, these Defendants state as follows:

Defendants Stroh and Keith: are not medically trained and licensed, not qualified to judge adequacy of medical care.  They do note that there may have been times when Plaintiff did not get his medication, but they are not qualified to prescribe or to hand out anything not available in pill cart to be handed out.

Melton answers yes for the portion of Plaintiff's medical treatment that occurred when she was present;  Melton was on medical leave after August 23, 2016 and does not have personal knowledge of what occurred after that.

Lee:  answer yes, for the medical care that Plaintiff would accept.  Plaintiff was at times noncompliant with the recommended care.

*10. Please state with specificity every interaction that you had with David Henegar at any point between January 1, 2014 and the present. For each instance, please describe:*
   *a. The date and time of the interaction;*

12

*b. Any other Persons involved or present;*
*c. Any Communications that you had with David Henegar or with any other Persons during the interaction;*
*d. Everything that occurred during that interaction.*

*If you provided any medical evaluation(s), medical treatment, or medications to David Henegar during this time, please describe the evaluation performed by you or any other Person, the treatment given by you or any other Person, or the medications given by you or any other Person. Please also describe any other treatment or medications requested or considered. If you intend to answer by reference to Documents, please state under oath that the Documents contain all of the information responsive to this Interrogatory.*

These Defendants object that this interrogatory is overbroad and seeks information that are irrelevant to any claim or defense to the extent that it seeks discovery regarding allegations, claims or parties who have been dismissed from this case. Subject to and without waiving the foregoing objections, these Defendants answer as follows:

Stroh and Keith: this interrogatory is impossible to answer; they interact with hundreds of inmates every day. As to their interactions with Plaintiff, other than dealing with the seizures that occurred on August 31/September 1, 2016, they experienced nothing out of the ordinary. To the extent that either Stroh or Keith was involved in the late pill call on the last few days of August 2016, they may have discussed with Plaintiff the fact that no Dilantin pills were available for him in the pill cart.

Lee and Melton: By and large, any interactions Nurses Lee and Melton had with Plaintiff would be documented in Plaintiff's medical records.

13

Additionally, once the late pill call moved to 16:00, Nurse Melton saw Plaintiff every day except for weekends, holidays, and vacations. And Nurse Lee was involved in drawing blood for Dilantin levels to be checked.

*11.   Please identify all of your supervisors (all the way up the chain of command) during the period of time that you worked for GDOC as of August 26, 2016.*

These Defendants object that this interrogatory is overbroad and seeks information that are irrelevant to any claim or defense to the extent that it seeks discovery regarding allegations, claims or parties who have been dismissed from this case. Subject to and without waiving the foregoing objections, these Defendants answer as follows:

Stroh and Keith:  Sgt. Keith to Lt. Stroh to Capt. Lavon Martin to Deputy Warden of Security Reagan Black to Warden Bruce Lee to Regional Director Belinda Davis to Facilities Director Steve Upton to Commissioner Homer Bryson to Governor Nathan Deal

Melton and Lee:  Cindy McDade to Frank Turner (Augusta); also Deputy Warden of Care and Treatment Jennie Casper and Deputy Warden of Security Black may had some supervisory authority

*12.   Do you contend that there was a policy, procedure, or practice in place at Walker between 2011 and the present governing:*
*     a. Access to medical evaluation or treatment by prisoners;*
*     b. Provision of medical care to prisoners;*
*     c. Provision of medication to prisoners;*

14

CHRISTOPHER M. CARR     112505
Attorney General

KATHLEEN M. PACIOUS 558555
Deputy Attorney General

/s/ Susan E. Teaster
SUSAN E. TEASTER  701415
Senior Asst. Attorney General

/s/ Laura L. Lones
LAURA L. LONES 456778
Senior Assistant Attorney General

Attorneys for Defendants Lee, Melton, Stroh, and Keith

Please Serve:
LAURA L. LONES
Assistant Attorney General
Department of Law, State of Georgia
40 Capitol Square, S.W.
Atlanta, Georgia  30334-1300
Telephone: (404) 463-8850
Facsimile:  (404) 651-5304
E-mail: llones@law.ga.gov

20